UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **SHARON D. CARTER,** | : | Case No. 1:09-CV-667 |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| v. | : | |
| **MICHAEL J. ASTRUE,** | : | **OPINION & ORDER** |
| **Commissioner of Social Security,** | | |
| **Defendant.** | : | |

This is an action for judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying the Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Pursuant to Local Rule 72.2(b), this matter was referred to Magistrate Judge David S. Perelman for preparation of a Report and Recommendation ("R&R"). In his R&R, the Magistrate Judge recommended that the Commissioner's final administrative decision be affirmed and that final judgment be entered in the Commissioner's favor (Doc. 23.) On September 2, 2010, Carter timely objected to the Magistrate Judge's R&R. (Doc. 26.) The Commissioner filed a response to the objection on September 16, 2010. (Doc. 27.) For the reasons articulated herein, the Court disagrees with the recommendation that the Commissioner's final decision be affirmed. Instead, the Court **REVERSES** the final administrative decision of the Commissioner and **REMANDS** this case for rehearing and a full and appropriate consideration of Carter's credibility and determination of her residual functional capacity.

I. **BACKGROUND**

A. **Factual Background**

Plaintiff, Sharon Carter, was born in August 1957 and was forty-nine (49) years old at the time of her alleged disability onset date. Carter has a high school education and at least one year of college education. (Tr. 13.) She has past relevant work experience as a machine operator. (Tr. 13.)

Carter filed her application for Supplemental Security Income Benefits, under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq, on April 24, 2007, when she was forty-nine (49) years old. Carter claims a disability onset date of December 20, 2006. (Doc. 17 at 1.) Carter claims disability on the basis of injuries resulting from being hit by a truck. Specifically, Carter claims to suffer from pain in her ankles, wrists, hands, knees, hip, and back. (Tr. 21, 24-27.)

In December 2006, Carter was hit by her friend's truck and was treated by Dr. Lance Wilson in the emergency room. (Tr. 210-11, 321.) During the examination, Carter denied having any back pain, but complained of ankle pain, left knee pain, abdominal pain, and neck pain. (Tr. 210, 212) During the examination, Plaintiff admitted drinking one beer earlier in the day. (Tr. 210.) Carter exhibited cervical spine tenderness, a stable pelvis, normal neurological testing, a mild diffuse pop of the right ankle without swelling, and a mild diffuse pop of the left knee. (Tr. 211-12.) An x-ray showed a fracture of Carter's left fibula, and CT-scans showed facial fractures, but no acute injury to her cervical spine, pelvis or chest. (Tr. 213-218). Carter was prescribed an antibiotic and Oxycodone, and she was discharged the following day in stable condition. (Tr. 209-10.)

In January and February of 2007, Carter visited Kenneth Stern, a chiropractor, on three occasions. (Tr. 264-65.) At these visits, Carter exhibited painful ranges of motion in both ankles and her cervical and lumbar spine, and numbness on the right side of her face. (Tr. 264.) Stern

diagnosed Carter as having cervical, thoracic, and lumbar strain; bilateral ankle strain; and headaches. (Tr. 264.)

In June 2007, Carter saw Dr. Sally Felker for a consultative evaluation. (Tr. 268-72.) When Dr. Felker asked Carter about her disability, Carter stated that her disabling conditions included a "broken hip, broken right foot, ankle, spine out of line, car accident, nose broken, missing teeth, hearing on right side bad, vision, car ran over my face and right side, prior to the car accident my right hip was broken and I have carpal tunnel." (Tr. 269.) In addition, Carter indicated that she was depressed. (*Id.*) Dr. Felker noted that Carter claimed that, at some point, her eye was hanging out of its socket and that Carter treated the injury by putting her eye back in its socket. (*Id.*) Felker indicated that the story seemed unlikely and that Carter seemed to dwell on themes that emphasized her disability and portrayed herself as a victim. (*Id.*)

With respect to her evaluation of Carter, Dr. Felker indicated that Carter's communication was hard to follow at times, and her attention span and ability to concentrate were restricted. (Tr. 270.) Dr. Felker found that Carter could perform serial seven subtractions correctly, but at a slow pace. (*Id.*) In addition, Dr. Felker administered several insight, judgment, and intelligence tests. (*Id.*) According to Dr. Felker, Carter's results to these tests were inconsistent with a person having the level of education similar to that of Carter. (*Id.*) As a result of her evaluation, Dr. Felker diagnosed Carter with Unspecified Mental Disorder, Mixed Personality Disorder, and a GAF score of 54. (Tr. 271-72.) Dr. Felker opined that these results indicated Carter had a moderate impairment in her ability to relate to others and deal with the general public, and moderate impairment in her ability to relate to work peers and supervisors, and to tolerate the stresses of employment. (Tr. 271.)

On July 3, 2007 an x-ray of Carter's right hip was normal. (Tr. 296.)

On July 12, 2007, Dr. Wilfredo Paras performed a consultative examination of Carter. (Tr.

3

280-81.)  Carter indicated that she experienced constant pain in her lower back, hips, ankles, and knees since the December 2006 accident.  (Tr. 280.)  Carter stated that she took Ibuprofen for her pain and that she had no medical insurance, so she was unable to see any doctors.  (Tr. 280-81.) Carter noted that she was able to take care of her cats and her house, sew, and crochet.  (Tr. 281.) When she shopped for groceries, however, Carter indicated that she needed someone to help carry her groceries.  (*Id.*)  With respect to physical exertion, Carter indicated that her lower back and right hip pain limited her from prolonged sitting, standing, and walking, frequent bending, heavy lifting, or climbing stairs.  (*Id.*)

During Dr. Paras's examination, Carter complained of pain in her right side and she walked slowly without an assistive device.  (*Id.*)  Dr. Paras found that Carter's deep tendon reflexes were reduced bilaterally and there was moderate tenderness in her right lower back.  (*Id.*)  In addition, Dr. Paras found that Carter exhibited a painful right hip on limited range of motion of the right hip, slightly painful right low back on limited range of motion of the dorsal lumbar spine, painful right leg on limited range of motion of the right knee, stiffness of the right knee on limited range of motion of the right knee, and stiffness of the left hip on slightly limited range of motion of the left hip.  (*Id.*)  Dr. Para opined that Carter's ability to perform work-related physical activities was limited mainly by her low back and hip pain.  (*Id.*)

On July 18, 2007, psychologist Irma Johnston, a state agency records-reviewing psychologist, completed a Psychiatric Review Technique Form to assess Carter under listings for Unspecified Mental Disorder and Personality Disorder with Histrionic Traits.  (Tr. 289, 295-96.) Dr. Johnston opined that Carter had mild limitations in her activities of daily living and maintaining concentration, persistence, or pace, a moderate limitation in maintaining social functioning, and no episodes of decompensation.  (Tr. 299.)  In addition, Dr. Johnston completed a mental residual

functional capacity ("RFC"),[1] and concluded that Carter was moderately limited in numerous mental abilities, but that Carter ultimately retained the capacity to understand, recall, and perform simple to moderately complex tasks in a relatively static work-like setting, where interaction with others is infrequent and superficial. (Tr. 303-06.)

On August 3, 2007, Dr. Cindi Hill, a state agency reviewing physician, completed a physical RFC with respect to Carter. (Tr. 307.) Dr. Hill opined that Carter could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk and sit about six hours in an eight-hour workday. (Tr. 308-09.) Dr. Hill also noted that Carter could never climb a ladder, rope, or scaffolds, kneel, or crawl, and that she could occasionally stoop and crouch, and operate bilateral foot controls. (*Id.*) With respect to her complaints of pain, Dr. Hill indicated that, while her claims were credible in nature, they were not credible with respect to their severity. (Tr. 308, 312). Dr. Anton Freihofner, a state agency reviewing physician, affirmed Dr. Hill's assessment in December 2007. (Tr. 331.)

On August 17, 2007, Carter saw chiropractor Richard Mulcahy for an initial evaluation. (Tr. 354-61.) Carter indicated that, as a result of her pain, she could perform self care and personal hygiene only with help from another person and these activities involved significant pain. (Tr. 355.) In addition, Carter indicated that standing, sitting, climbing stairs, and riding in a car as a passenger for a long period of time were all virtually impossible. (*Id.*) During the examination, Carter exhibited an antalgic gait favoring the left, and mild to moderate restriction in range of motion of her cervical and lumbar spine, and her extremities. (Tr. 356-57.) In addition, Mulcahy conducted a number of tests on Carter that he interpreted as showing soft tissue injury of the neck and cervical

---

[1] An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p ("Assessing Residual Functional Capacity in Initial Claims").

muscles, soft tissue injury of the low back, and thoracolumbar sprain/strain. (Tr. 358-60.) Mr. Mulcahy opined that Carter was in a chronic state. (Tr. 360.)

In October 2007, Carter was seen at the Care Alliance for complaints of pain in her hip, knee, and lower back. (Tr. 327-28.) During the examination, alcohol could be smelled on her breath, and she admitted drinking one beer for pain. (Tr. 327.) During her examination, Carter indicated that her treatment after being hit by the truck involved being kept for eight hours and then being put out on the street. (*Id.*) In addition, she reiterated her claim about putting her eye back in its socket. (*Id.*) After Carter's examination, she was assessed with arthralgias in her knee and hip. (Tr. 328.)

On November 2, 2007, Mr. Mulcahy completed a state agency questionnaire. (Tr. 322-23.) While he noted that he saw Carter one time and he had limited information about her prior care, he indicated that Carter had difficulty walking due to severe back pain; weakness in flexion and extension of her low back, hip, and leg; L5/S1 radiculopathy in her right leg; and range of motion limitations in her low back. (Tr. 323.)

On November 14, 2007, Carter returned to the Care Alliance with complaints of pain in her right hip. (Tr. 326.) Again it was noted that alcohol could be smelled on her breath. (*Id.*) During her examination, Carter indicated that she drank 20 pints of beer earlier in the day. She was assessed with alcoholism and arthralgias. (*Id.*)

In January 2008, Carter saw Dr. Mohamed Abou El Fadi for her complaints of back and knee pain. (Tr. 372.) On examination, Dr. El Fadi found that Carter had limited range of motion in her back with muscle spasm, but she had normal range of motion in her extremities, hips, knees, and shoulders. (*Id.*) Dr. El Fadi assessed her with back pain, requested an MRI, and prescribed Percocet. (*Id.*)

In August 2008, Carter had a follow up examination with Dr. El Fadi. (Tr. 369-70.) At the

6

examination, Carter claimed that she was unable to get the MRI done because she was not able to "go anywhere." (Tr. 369.) During the examination, Dr. El Fadi noted that Carter did not appear to be in acute distress, she had limited range of motion in her back with tenderness and muscle spasms, and her gait was slow but steady. (*Id.*) An MRI of her lumbar spine later that month revealed mild right foraminal encroachment at L4-5, and diffuse degenerative disk changes in L2-3 and L3-4 with associated mild scoliosis, but no spinal stenosis. (Tr. 368.)

In September 2008, Carter saw Dr. Yahya Ahmed. Dr. Ahmed reviewed Carter's MRI results and referred her to pain management for evaluation and possible nerve blocks. (Tr. 365.) Dr. Ahmed also referred Carter to a neurologist for evaluation of complaints of numbness in her wrists. (Tr. 354, 361.)

### 1. Administrative Hearing

At the hearing on November 14, 2008, conducted before ALJ Deborah A. Arnold, Carter was represented by counsel. (Tr. 8.) Carter stated that she is constantly in pain, which she rates at an average of a seven or eight on a ten point scale. (Tr. 26.) Carter testified that, because of her pain, she needed her friend to take the trash out for her and to do her yard work. (Tr. 15-16.) Carter stated that sometimes her back pain is so severe that she has to crawl to get around her house. (Tr. 28.) In addition, she noted that she usually has somebody with her when she leaves her home. (Tr. 27.) With respect to her health care, Carter stated that she could not afford her prescriptions, and that she had no health care. (Tr. 17.)

### 2. ALJ Decision

On November 28, 2008, the ALJ issued a decision finding that Carter was not disabled and therefore not entitled to SSI payments. (Tr. 80.) In accordance with the requisite five-step analysis set forth in 20 C.F.R. § 416.920, the ALJ reached the following conclusions:

7

    1.    Carter has not engaged in substantial gainful activity since April 24, 2007, the application date;

    2.    Carter has the following severe impairments: (1) degenerative disc disease; (2) a personality disorder; and (3) alcoholism;

    3.    Carter does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations;

    4.    Carter's impairments prevent her from performing her past relevant work as a machine operator; and

    5.    Carter has the RFC to perform "a reduced range of light work.," and therefore she can perform jobs that exist in significant numbers in the national economy.

(Tr. 74-79.)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Carter's request for review on February 26, 2009. (Tr. 1-5).

### 3.    The Magistrate Judge's Report & Recommendation

Carter filed the instant civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's decision denying Carter's claim for SSI. Carter argues that: (1) the ALJ erred in failing to assess her credibility in accordance with the Commissioner's regulations and rulings regarding pain evaluation and credibility assessments; and (2) the ALJ's RFC is not supported by substantial evidence. (Doc. 17 at 11.) In the R&R, Magistrate Judge Perelman stated that these challenges "basically boil [d]own to a challenge to the ALJ's decision for failing to address every bit of evidence arguably bearing upon the plaintiff's subjective pain complaints, including the totality of the plaintiff's testimony." (Doc. 23 at 4.) The R&R states that "[i]n this Court's opinion this argument is without merit." (*Id.*) Magistrate Judge Perelman agreed with the ALJ that the paucity of objective medical evidence does not support Carter's extreme subjective complaints of pain. (*Id* at 5.) Magistrate Judge Perelman concluded that, at the very least, the ALJ's determination as to Carter's credibility was within her zone of choice under the substantial evidence

8

standard. (*Id.*) Accordingly, Magistrate Judge Perelman recommended that final judgment be entered in the Commissioner's favor. On September 2, 2010, Carter timely objected to the Magistrate Judge's R&R. (Doc. 26.) The Commissioner filed a response to the objection on September 16, 2009. (Doc. 27.)

## II. STANDARD OF REVIEW

In cases that are referred to a magistrate judge for preparation of an R&R, the Federal Magistrates Act requires that a district court conduct a *de novo* review only of those portions of a R&R to which the parties have made an objection. 28 U.S.C. § 636(b)(1)(C). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

A district court's review of a final administrative decision of the Commissioner made by an ALJ in a Social Security action, however, is not *de novo*. Rather, a district court is limited to examining the entire administrative record to determine if the ALJ applied the correct legal standards in reaching his decision and if there is substantial evidence in the record to support his findings. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

Judicial review of the Commissioner's decision made by an ALJ in a Social Security action is restricted to determining whether the decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007).

"Substantial evidence" is evidence that a reasonable mind would accept to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). This standard requires more than a scintilla of evidence, but less than a preponderance. *Id.* When making this determination, a district court must not focus, or base its decision, on a single piece of evidence. Instead, a court must consider the totality of the evidence on the record. *See Allen v. Califano*, 613 F.2d 139 (6th Cir.

1980); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir 1978).

To determine whether substantial evidence exists to support the ALJ's decision, a district court does not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. Rather, a district court must affirm the ALJ's decision, provided it is supported by substantial evidence, even if the court would have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir.1999). This is true even if there is evidence favoring Plaintiff's side; the ALJ's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir.1988). Accordingly, an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Not withstanding the above, even if an ALJ's decision is supported by substantial evidence, that decision will not be upheld where the ALJ "fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III. ANALYSIS

As previously indicated, the ALJ's decision to deny disability benefits to Carter followed the requisite five-step analysis set forth in 20 C.F.R. § 416.920. Steps four and five of the inquiry require the ALJ to determine Carter's RFC. Specifically the ALJ must determine whether Carter's limitations permit her either to resume her past relevant work or adjust to other jobs that exist in significant numbers in the national economy.

To make these determinations, the ALJ must evaluate the extent of Carter's impairment. In

10

this action, Carter challenges this aspect of the ALJ's decision on the basis of two separate, but interrelated, grounds. First, Carter contends that "[t]he ALJ erred in failing to assess Carter's credibility in accordance with the Commissioner's regulations and rulings . . ." with respect to Carter's subjective complaints of pain. Second, Carter alleges that the ALJ erred because the ALJ's RFC is not supported by substantial evidence.

The Court finds that the ALJ failed to assess Carter's credibility in accordance with the Commissioner's regulations and rulings. In light of this failure, the Court cannot determine whether the RFC, which is based upon the ALJ's credibility assessment, is supported substantial evidence.

### A. The ALJ Failed to Properly Evaluate Carter's Credibility

In determining whether a claimant is disabled, an ALJ must consider all of a claimant's symptoms, including pain, and the extent to which the claimant's symptoms could reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 416.929. In certain situations, symptoms, e.g., pain, and not the underlying condition, form the basis of the disability claim. *Id*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6 th Cir. 2007).

An ALJ uses a two-part analysis to evaluate complaints of disabling pain. *Rogers*, 486 F.3d at 247. "First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, he must then evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* (*citing* § 416.929) (internal citations omitted).

With respect to the second part of this analysis, when the ALJ finds that there is a medically determinable impairment that could reasonably produce the claimants alleged symptoms, the ALJ

11

must evaluate the "intensity, persistence, and functionally limiting effects of the symptoms." § 416.929. This evaluation requires the ALJ to make a finding on the credibility of the claimant's statements about his or her symptoms and the functional effects, if any, of those symptoms. *Id.*; Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *1; *Rogers*, 486 F.3d at 247 ("Whenever the claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.' ")

In making this credibility determination, the ALJ must consider, in addition to the objective medical evidence:

> (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Soc. Sec. Rul. 96-7p. Importantly, an ALJ's finding on the credibility of the claimant's statements cannot be based on an intangible or intuitive notion about the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing Soc. Sec. Rul. 96-7p). Instead, the ALJ's decision must contain specific reasons for the credibility finding, supported by the evidence in the case record, and must be specific to make clear to the claimant and to any subsequent reviewers the weight that the ALJ gave to the claimant's statements and the reasons for the weight. *Id* (citing Soc. Sec. Rul. 96-7p).

It is, however, the ALJ's role, and not the reviewing court's, to make credibility findings. *See Hardaway v. Sec. Health and Human Servs.*, 823 F.2d 992, 928 (6th Cir. 1987); *Williamson v.*

12

*Sec. Health and Human Servs.*, 796 F.2d 146, 150 (6th Cir. 1986). Additionally, the ALJ's findings as to a claimant's credibility are entitled to deference, in light of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints. *See, e.g.*, *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir.1987) (citing *Kirk v. Sec. of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir.1981)).

In the present case, the ALJ's consideration of Carter's subjective complaints of pain and assessment of her credibility do not comport with the Social Security Administration's requirements. At the outset, the ALJ concluded that Carter's medically determinable impairments could reasonably be expected to cause the symptoms of which she complained. (Tr. 77.) Based on this conclusion, the ALJ was required to make a credibility finding with respect to Carter's subjective complaints of pain and the limiting effect of her pain. With respect to the credibility finding, the ALJ noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.*)

The ALJ, then, properly elaborated on this conclusory statement by supplying several reasons for her credibility finding. Specifically, the ALJ stated that Carter's complaints with respect to her back pain, hip pain, shoulder pain, wrist pain, and hand pain were not credible. (*Id.*) With respect to pain originating from these body parts, the ALJ discussed how the objective medical evidence in the record did not support the level or effect of the pain alleged by Carter. For example, regarding Carter's back pain, the ALJ stated:

> The undersigned finds no persuasive evidence of record to support the severity of the claimant's limiting and persisting effects of back pain. MRIs of the claimant's lumbar spine reveal diffuse degenerative disk changes with no nerve root impingement and no significant central spinal canal stenosis. The claimant's gait and reflexes were normal and her sensation was grossly intact. Further, an examination of the deep tendon reflexes of the upper and lower extremities, in relation to the cervical and

>lumbar nerve roots, was performed by the claimant's chiropractor, Richard Mulchay, D.C., and he noted they were reacting within normal limits with approximately equal strength, one side being compared to the other.

(*Id.*) In addition, the ALJ noted that Carter's relatively conservative and routine treatment for her physical and mental problems weighed against finding that her complaints of pain and its effect were credible upon the apparent rationale that, if her pain was really as bad as she claimed, she would have sought medical treatment more frequently. (*Id.*)

As Carter correctly notes, there is no evidence in the record that the ALJ, in making her credibility finding, considered factors like Carter's daily activities.[2] The ALJ, however, must consider this factor when making a credibility finding as it relates to complaints of pain and the pain's functional effects. Soc. Sec. Rul. 96-7p. For example, Carter testified that, because of her pain, it is necessary for her friend to take her trash out and do her yard work (Tr. 15-16), her chiropractor made house calls (Tr. 18), and that sometimes she has to crawl to get around the house. (Tr. 29.) Despite the requirement that the ALJ consider such daily activities, there is no mention of these activities in the ALJ's credibility finding. The ALJ's decision with respect to these daily activities, moreover, does not provide specific reasons why the ALJ found Carter's testimony about the effect of her pain on her daily activities not credible. The ALJ's credibility finding cannot provide these specifics because it does not mention the effect Carter's pain has on her daily activities in the first place. It is impossible to assess why one found certain evidence not credible if the

---

[2] The ALJ's decision does mention that "[i]n activities of daily living, the claimant has mild restrictions. The claimant lives alone and is able to do some household chores, including cooking, vacuuming weekly and caring for a pet. The claimant's hobbies include crocheting and watching television." (Tr. 75.) The discussion of these activities, however, occurs as part of the ALJ's step three analysis regarding whether Carter's impairments meet or equal a listed impairment. (Tr. 74-75.) None of this information is mentioned in the ALJ's credibility analysis undertaken pursuant to steps four and five.

14

evidence is not referenced.

With respect to the ALJ's conclusion that Carter's complaints of pain were not credible because of Carter's relatively conservative treatment, this Court is troubled by the ALJ's failure to discuss other possible reasons for Carter's failure to seek medical attention. Ruling 96-7p warns that "the [ALJ] must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." Soc. Sec. Rul. 96-7p at *7. The inability of a claimant to afford treatment is an express example of such an explanation. *Id.* at *9. Here, Carter testified that she cannot afford her pain medication, and that she does not have medical insurance. (Tr. 17.) In this instance, because the ALJ never mentioned Carter's testimony on this point, it is not possible to determine if the ALJ considered Carter's inability to pay for care as a possible reason for her not seeking more rigorous medical treatment.

More troubling than the ALJ's failure to consider the required factors in making her credibility determination, however, is the fact that the ALJ apparently discounted all of Carter's subjective complaints of pain and its effects solely because she found that there was no objective medical evidence to support Carter's claims. The ALJ repeatedly made statements that indicated that the lack of objective medical evidence was the sole the basis for the ALJ's credibility finding. (Tr. 76-77.) For example, the ALJ stated, "[t]he claimant's alleged limiting and persisting effects of shoulder pain is implausible. The record reflects the claimant had 'good' right and left should abductors, external rotators and internal rotators during manual muscle testing. Moreover, the claimant's range of motion in her shoulders was deemed normal." (Tr. 77.)

This is the type of analysis, however, that § 416.929 and Ruling 96-7p seek to prevent. This

15

Regulation and Ruling specifically relate to situations where the symptoms the claimant reports are medically possible on the basis of impairment, but the objective medical evidence does not confirm the severity of the symptoms. *See* § 416.929; Soc. Sec. Rul. 96-7p; *Rogers*, 486 F.3d at 247 ("Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints . . . ."). In fact, Ruling 96-7p specifically states that "allegations concerning the intensity and persistence of pain or other symptoms *may not be disregarded solely because they are not substantiated by objective medical evidence. . .* [;] the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms *is only one factor that the [ALJ] must consider* in assessing an individual's credibility and must be considered in the context of all the evidence." Soc. Sec. Rul. 96-7p (emphasis added).

While the Court acknowledges that the ALJ conclusorily stated that all evidence in the record was considered prior to making the credibility finding, there is nothing in the record that indicates that anything but the objective medical evidence was considered by the ALJ. Without more evidence in the ALJ's decision, this Court is unable to say whether the ALJ's credibility finding was made properly.

An ALJ's decision will not be upheld where the ALJ "fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007). Here, it is not possible for this Court to determine, as a matter of law, that Carter was not prejudiced on the merits or deprived of a substantial right. The Court comes to this conclusion for two reasons. First, the ALJ has a unique

16

opportunity to observe the claimant and judge subjective complaints. *See, e.g.*, *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987) (citing *Kirk v. Sec. of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). In light of this unique perspective, the Court does not have sufficient evidence to say that Carter was not prejudiced or deprived of a substantial right. Second, it is the role of the ALJ, not this Court, to make credibility determinations. *See Hardaway v. Sec. Health and Human Servs.*, 823 F.2d 992, 928 (6th Cir. 1987); *Williamson v. Sec. Health and Human Servs.*, 796 F.2d 146, 150 (6th Cir. 1986). To determine that Carter was not prejudiced or harmed by the ALJ's failure follow the proper procedure for making a credibility finding, this Court would have to, in essence, determine that Carter's subjective pain complaints have no credibility, and that, even if the ALJ had followed the proper procedure, the ALJ would have reached the same conclusion.

While there is certainly much in the record to suggest that the ALJ's credibility determination may ultimately be justified because the ALJ failed to follow procedural regulations designed to protect Carter, this Court reverses the ALJ's decision. The Court does not find this procedural failure to be harmless error. *See McLean v. Comm'r of Soc. Sec.*, 360 F. Supp. 2d 864, 872 (E.D. Mich. 2005) (citing *Wilson*, 486 F.3d at 547-48)) ("The error is not harmless when the reviewing court is hampered by the lack of explanation and the rejected evidence could very well establish disability, as here.").

### B. The Court Cannot Determine Whether Substantial Evidence Supports the ALJ's RFC

Carter objects that the ALJ's RFC determination is not supported by substantial evidence. (Doc. 26 at 7.) As noted above, the ALJ makes an RFC assessment to determine whether, pursuant to steps four and five, the claimant is capable of performing his or her past relevant work or whether the claimant can perform jobs that exist in significant numbers in the national economy. 20 C.F.R.

17

§ 416.920(a). In cases where subjective complaints of pain and its effects exist, the ALJ must make a credibility determination with respect to the claimant's complaints of pain and weigh that conclusion in reaching an RFC. § 416.929; Soc. Sec. Rul. 96-7p. The applicable regulation states "[w]e will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work." § 416.929.

Here, the ALJ found that Carter had a RFC to perform a reduced range of light work. (Tr. 76.) The ALJ summarized the finding by stating, "after carefully considering all of the documentary evidence in the record, in conjunction with the claimant's testimony, the undersigned concludes that the claimant's subjective complaints of pain are not as severe or limiting as alleged . . . and would not preclude her from performing work at the residual functional capacity noted above on a regular and sustained basis." (Tr. 78.) Accordingly, the ALJ's RFC was made on the basis of the ALJ's credibility finding.

As discussed above, however, the ALJ's credibility finding with respect to Carter's subjective complaints of pain and its effect, was not made in compliance with Social Security Administration regulations. Accordingly, because the ALJ's assessment of Carter's RFC was tainted by the improper credibility finding, the ALJ's RFC finding that Carter could perform a reduced range of light work is similarly flawed. *Rogers*, 486 F.3d 234, 249-50 (remanding the case for further proceedings in light of the fact that the ALJ's RFC was flawed because the ALJ failed to follow regulations with respect to determining the claimant's credibility and the weight afforded to claimant's treating physicians).

18

IV.  **CONCLUSION**

This case is a close one. It is not the Court's intent to impose unduly burdensome requirements on the ALJ's written findings or to mandate that certain magic words be used whenever pain-based credibility assessments are made. Where, as here, however, such credibility assessments are critical to the ultimate benefits determination and there is no mention of factors the ALJ is mandated to consider, the Court must seek further explanation from the ALJ. Ultimately, the Court finds that it is unable to determine whether substantial evidence supports the ALJ's decision because: (1) the ALJ's decision does not indicate whether the ALJ considered specifically enumerated categories of evidence, in addition to objective medical evidence, that the ALJ must consider in making a credibility finding; and (2) the ALJ did not provide specific reasons for discounting Carter's additional evidence in making the credibility finding. As such, for the foregoing reasons, the Court declines to adopt the R&R, **REVERSES** the ALJ's decision to deny benefits, and **REMANDS** to the ALJ for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

*s/Kathleen M. O'Malley*
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: September 30, 2010**